JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This matter has been remanded to this court for further determination from the Ohio Supreme Court, which disposed of appellant, S.F.'s, [1] first assignment of error and remanded the case to this court with directions to address only the remaining two assignments of error. Finding no error in the proceedings below, we affirm.
 {¶ 2} S.F.'s second and third assignments of error state:
 Assignment of Error Two
 "The judgment terminating Appellant's parental rights is against the manifest weight of the evidence and constitutes a denial of due process of law."
 Assignment of Error Three
 "The trial court abused its discretion and denied Appellant due process of law by denying his motion for continuance of the hearing held July 26, 2007."
 Factual and Procedural History {¶ 3} On February 6, 2006, the Cuyahoga County Department of Children and Family Services (CCDCFS), removed H.F. from the custody of his father, S.F., and filed a complaint for neglect and temporary custody. Eight days later, CCDCFS filed a separate complaint for abuse, neglect, dependency, and temporary custody of R.F. The children's mother did not appear at the *Page 4 
adjudication hearing. At the adjudication hearing, S.F. admitted the allegations in the amended complaints. The magistrate recommended that H.F. be found neglected, that R.F. be found abused, neglected, and dependent, and that both children be placed in the temporary custody of CCDCFS.
 {¶ 4} In May 2006, the juvenile court approved the magistrate's decisions, and placed H.F. and R.F. in temporary custody. The order concerning H.F. was entered on June 5, 2006, and the order concerning R.F. was entered on June 7, 2006.
 {¶ 5} On May 4, 2007, CCDCFS filed motions to modify temporary custody to permanent custody. The court held a dispositional hearing on the motions on July 26, 2007; although S.F. was represented by counsel, he did not appear. After receiving testimony and reviewing the recommendation of the guardian ad litem, the juvenile court terminated his parental rights and granted permanent custody to CCDCFS. S.F. appeals from these orders. Pursuant to the instructions on remand, we address only S.F.'s second and third assignments of error.
 {¶ 6} At the outset, we note that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her child. In reMurray (1990), 52 Ohio St.3d 155, 156. However, a parent's right is not absolute. "The natural rights of a parent are always subject to the ultimate welfare of the child, which *Page 5 
is the polestar or controlling principle to be observed." In reCunningham (1979), 59 Ohio St.2d 100, 106. Consequently, the state may terminate parental rights when the child's best interest demands it.
 {¶ 7} However, "[i]f the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." In re P.R., Cuyahoga App. No. 79609, 2002-Ohio-2029, at ¶ 15.
 {¶ 8} The standard of proof to be used by the trial court when conducting permanent custody proceedings is clear and convincing evidence. R.C. 2151.414(B)(1). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 9} It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. *Page 6 
 {¶ 10} We also note that the discretion a trial court enjoys in custody matters should be accorded the utmost respect given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. In re Satterwhite, Cuyahoga App. No. 77071, 2001-Ohio-4137. "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures, and voice inflections, and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record." Id., quoting Miller v. Miller (1988), 37 Ohio St.3d 71, 74. As the Ohio Supreme Court has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses."Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.
 {¶ 11} The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 12} In order for permanent custody to be granted in favor of the State, R.C. 2151.414 requires the existence of a situation, shown by clear and convincing evidence, where the child "cannot be placed with either parent within a reasonable period of time or should not be placed with the parents." R.C. 2151.414(B)(1). Under this section, the trial court is required to consider the *Page 7 
custodial history of a child in making its "best interests" determination. In so doing, the court must ascertain whether the child has been in the temporary custody of one or more public services agencies or private agencies for twelve or more months of a consecutive twenty-two-month period. R.C. 2151.414(B)(1)(d); R.C. 2151.414(D)(3).
 {¶ 13} These facts, when present as they are in this case, provide adequate grounds in and of themselves to grant permanent custody to the agency. See In re D.J., Cuyahoga App. Nos. 91916, 91917, 91918,2009-Ohio-1095; In re Baby Boy M., Cuyahoga App. No. 91312,2008-Ohio-5271; In re T.F., Cuyahoga App. Nos. 91438, 91472,2008-Ohio-6652; In re A.M., Cuyahoga App. Nos. 91173, 91218,2008-Ohio-4454. Given that both H.F. and R.F. were in CCDCFS's custody for the "twelve or more months of a consecutive twenty-two month" threshold, the trial court could have found that this reason alone was sufficient to terminate S.F.'s parental rights. Further, since findings under R.C. 2151.414(B)(1)(d) and R.C. 2151.414(D)(3) are alternative to other findings in the statute, each acts as an independently sufficient basis upon which to grant a motion for permanent custody filed by a children's services agency. See In re Langford, Stark App. No. 2004CA00349, 2005-Ohio-2304. Each also forms an independent basis for overcoming a manifest weight challenge. Id.
 {¶ 14} In addition, the trial court's inquiry was aided by the sixteen factors set forth in R.C. 2151.414(E). Under this statutory section, the trial court is required *Page 8 
to enter a finding that the child cannot or should not be placed with either parent if it finds by clear and convincing evidence that any of the sixteen factors exist. In re D.J., Cuyahoga App. No. 88646,2007-Ohio-1974, at ¶ 64.
 {¶ 15} Relevant to this section, the trial court made findings consistent with the statute that sections (E)(1), (E)(2), (E)(14) and (E)(15) were present. See Court Journal Entry of August 10, 2007, Vol. 0059, at 3994-3995.
 {¶ 16} In this case, S.F. admitted to the magistrate during the May 17, 2006 adjudicatory hearing that H.F. was neglected and R.F. was abused, neglected and dependent. Based upon these admissions, the trial court found H.F. neglected and R.F. abused, neglected, and/or dependent.
 {¶ 17} In addition, the following evidence was adduced at the July 26, 2007 dispositional hearing.
 {¶ 18} First, the children's social worker testified that both children tested positive for marijuana and cocaine at birth. Their mother failed to obtain any prenatal care and acknowledged using cocaine and marijuana during pregnancy. (Tr. May 17, 2006, at 9-10.)[2] At the time of trial, S.F. was homeless. (Tr. July 26, 2007, at 9-16.) His last known address was the shelter at 2100 Lakeside Avenue. *Page 9 
Id. According to the social worker's testimony, S.F. was unemployed at the time of the hearing and had no means of providing the basic necessities for his children. Id. Neither the social worker in the case nor his own attorney had any way of contacting him, since he failed to provide them with a telephone number or home address outside of the shelter.
 {¶ 19} In addition to being homeless, S.F. had some unfortunate relapses into drug use and, on more than one occasion, failed to complete substance abuse treatment for alcohol and cocaine addiction. Id. Even after completing court ordered treatment, the social worker testified that S.F. relapsed within one month. Id.
 {¶ 20} After this relapse, CCDCFS arranged for him to undergo new assessments. S.F. failed to appear at these appointments and also refused to comply with CCDCFS's requests for drug screens. (Tr. July 26, 2007, at 17.) In all, S.F. missed a total of ten Drug Court appearances.
 {¶ 21} R.F. and H.F's guardian ad litem testified that S.F. is a "very nice gentleman" who "really loves his kids." (Tr. July 26, 2007, at 32.) She also stated that she really hoped S.F. would "get himself together" and that at certain points in the proceedings "it looked very promising." (Tr. July 26, 2007, at 31.) Nonetheless, the guardian's position was that because S.F's "addiction is so severe," the children should be placed in the permanent custody of CCDCFS. (Tr. July 26, 2007, at 31, 32.) Although S.F. visited his children while they were in temporary custody, the children's social worker reported that S.F.'s visits with his *Page 10 
children while they were in temporary custody were at times "sporadic" and he failed to appear for any visits with them between January and March 2007. (Tr. July 26, 2007, at 18.) From March to July 2007, S.F. attended ten of sixteen scheduled visits. (Tr. July 26, 2007, at 18-19). S.F. also attended two out of five semi-annual reviews and staffings with the agency (Tr. July 26, 2007, at 21-22.)[3]
 {¶ 22} CCDCFS, through its social worker, provided S.F. with counseling and drug treatment. S.F. participated in the program and, to his credit, re-enrolled in the treatment program after initially relapsing. (Tr. July 26, 2007, at 26.) Unfortunately, S.F. was unable to follow through with a job referral through this program. (Tr. July 26, 2007, at 26.)
 {¶ 23} In the instant case, the record reveals S.F. has a history of drug abuse. Although he has complied with some components of his case plan, as mentioned above, the court heard testimony from CCDCFS's social worker regarding S.F.'s multiple relapses and failure to attend more than half of his meetings with his children. Finally, at the time of the adjudicatory hearing, S.F. had not fulfilled the terms of his case plan with reference to obtaining suitable housing for his children. Nearly two years had passed since R.F. and H.F. were removed from his custody and S.F. was homeless.
 {¶ 24} Based on the evidence in the record, the court properly determined CCDCFS presented clear and convincing evidence of neglect and dependency. *Page 11 
 {¶ 25} We must acknowledge that the termination of parental rights is "the family law equivalent of the death penalty." In re Hayes (1997),79 Ohio St.3d 46, 48; In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368. Yet, even in view of this, we cannot say that, based upon the record above, the trial court's decision was against the manifest weight of the evidence. Accordingly, S.F.'s second assignment of error is not well taken and is overruled.
 {¶ 26} At the outset, we note that we will not overturn the grant or denial of a continuance absent an abuse of discretion. State v.Unger (1981) 67 Ohio St.2d 65. In his brief, S.F. asserts that he "attended all but one of the proceedings in the case over the preceding one and a half years"; however, the record reflects otherwise. In addition to being absent from the meetings noted above, S.F. failed to appear for the July 26 dispositional hearing. S.F. also did not appear at the June 21, 2007 preliminary hearing. Further, S.F.'s assertion that his first request for a continuance was at the July 26, 2007 hearing is not correct; the record reflects a prior continuance request on January 18, 2007.
 {¶ 27} Loc. Juv. R. 49(C) provides as follows:
 "No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel."
 {¶ 28} Under this rule, S.F., through his counsel, failed to show good cause as to why the hearing should be continued, "having no cause which was not known to *Page 12 
him or his counsel prior to the date of trial or hearing." The record does not reflect that S.F. made any attempt to contact counsel or the court to let them know that he wished to postpone the proceedings or that he was unavailable on that date. In fact, S.F.'s counsel stated that the last time he had spoken to S.F. was February 27, 2007, while S.F. was still sleeping at the homeless shelter (Tr. July 26, 2007, at 33, 34.)
 {¶ 29} Based upon this record, we are unwilling to say that the court abused its discretion in denying S.F.'s motion for continuance.
 {¶ 30} Nor can we say that S.F. was denied his constitutional right to due process in these proceedings. Absent plain error, his failure to raise any constitutional objection at the trial level waives this issue on appeal. State v. Awan (1986), 22 Ohio St.3d 120; State v. Waddy
(1992), 63 Ohio St.3d 424. Plain error will only be recognized where, but for the error, the result of the trial would clearly have been different. Waddy at 437.
 {¶ 31} In this case, even if the trial court would have granted S.F.'s motion for continuance and reconvened the trial, nothing in the record indicates the result would have been different. S.F.'s third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and MARY J. BOYLE, J., CONCUR.
[1] The parties are referred to by their initials or title in accordance with this court's policy regarding non-disclosure of identities in juvenile cases.
[2] It should be noted that the children's mother made no attempt to challenge the proceedings at any stage. Unfortunately, she has been diagnosed as schzophrenic, bipolar, and upon the record, was confirmed as homeless and also as a crack cocaine addict. Because of the severity of her addictions and illness, all of her additional six children have been removed from her custody. Her whereabouts are unknown. Only S.F. attempted to mount an effort to parent his children, despite his addictions and setbacks. Admirable as this effort was, the record demonstrates that it was still not enough to warrant granting him permanent custody of his children in the trial court.
[3] These meetings are set up by the agency to review the custody of the children and the plan for the children's future. (Tr. July 26, 2007, at 21.) *Page 1