[Cite as *In re A.C.*, 2013-Ohio-1802.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99057**

---

## IN RE:  A.C.

## A Minor Child

[Appeal By Mother]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 11908327

**BEFORE:**  Keough, J., Celebrezze, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**  May 2, 2013

**ATTORNEYS FOR APPELLANT**

Timothy R. Sterkel
1414 South Green Road, Suite 310
South Euclid, Ohio 44121

Patricia Smrdel
2983 Warrensville Center Road
Shaker Heights, Ohio 44122

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Nicole A. Raimo
Assistant Prosecuting Attorney
Cuyahoga County Department of Children
and Family Services
4261 Fulton Parkway
Cleveland, Ohio 44144

KATHLEEN ANN KEOUGH, J.:

{¶1} Appellant-mother ("appellant"), appeals from the judgment of the Common Pleas Court, Juvenile Division, granting permanent custody of her minor child, A.C., to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS").[1] For the reasons that follow, we affirm.

{¶2} On May 6, 2011, CCDCFS requested and received an ex parte telephonic order of custody of A.C. On May 9, CCDCFS filed a complaint alleging neglect and dependency and requested a disposition of temporary custody and also predisposition of temporary custody of A.C. Following a hearing, the trial court granted predispositional custody to CCDCFS.

{¶3} On July 18, the trial court conducted an adjudicatory hearing on CCDCFS's complaint. All parties, including appellant and A.C.'s father, were present with counsel. Appellant entered into an admission to an amended complaint and agreed to a disposition of temporary custody. A.C. was then adjudicated neglected and committed to the temporary custody of CCDCFS.

{¶4} On March 16, 2012, CCDCFS filed a motion to modify temporary custody to permanent custody. On July 27, 2012, the case was scheduled for a permanent custody trial and appellant appeared with counsel. However, the trial was continued to August

---

[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

16. Neither the appellant nor A.C.'s father appeared for trial on August 16 and the trial was continued again to September 20. On September 20, appellant and A.C.'s father again failed to appear for trial. The trial court denied appellant's counsel's request for a continuance and the court held an evidentiary hearing on CCDCFS's motion for permanent custody. At the conclusion of the hearing, the trial court issued an oral decision granting permanent custody of A.C. to CCDCFS. The trial court issued a written decision on September 28, 2012, memorializing its order of permanent custody of A.C. to CCDCFS and terminating appellant's parental rights. Appellant now appeals from this order.

## I. Motion to Continue

{¶5} In her first assignment of error, appellant contends that the trial court abused its discretion when it denied her counsel's request for a continuance and proceeded to trial in her absence.

{¶6} Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Further, Loc.R. 49(C) of the Juvenile Division provides,

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

**{¶7}** The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge, and an appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. *In re L.S.*, 8th Dist. No. 95809, 2011-Ohio-3836, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

**{¶8}** A review of the record in this case reveals that the appellant appeared in court for the emergency custody hearing in May 2011 and again appeared for the adjudication and temporary custody hearing in July 2011. After that time, her only court appearance was on July 24, 2012, which was the original date of the permanent custody trial. However, the trial was continued to August 16 and then again on September 20 — both times appellant did not appear in court.

**{¶9}** The record shows that appellant was aware of the trial date because her attorney advised the court that she had spoken with her a week prior. Appellant had knowledge of the trial date, yet she did not contact her counsel regarding her unavailability and counsel reported he was unsure why appellant was not present. Although CCDCFS did not object to the continuance, A.C.'s guardian ad litem objected

stating that A.C. needed permanency and noted appellant's sporadic appearances in court.

**{¶10}** We do not find that the trial court abused its discretion in denying the continuance. This court reviewed similar facts in *In re H.F.*, 8th Dist. Nos. 90299 and 90300, 2009-Ohio-1798, and reached the same conclusion. *See also In re Distafano*, 3d Dist. No. 13-06-14, 2006-Ohio-4430 (mother's prior failure to appear at court hearings and the fact that she was represented by counsel compelled the conclusion that the trial court did not err in denying a continuance of a permanent custody hearing under Ohio Juv.R. 23). Much like in those cases, appellant was represented by counsel, aware of the permanent custody trial, and offers no explanation for her absence.

**{¶11}** Accordingly, the trial court did not abuse its discretion in denying the requested continuance and proceeding with the termination of parental rights hearing in appellant's absence. The assignment of error is overruled.

## II. Permanent Custody

**{¶12}** In her second assignment of error, mother contends that the trial court committed error when it terminated her parental rights and granted permanent custody to CCDCFS.

**{¶13}** When reviewing a trial court's judgment in child custody cases, the appropriate standard of review is whether the trial court abused its discretion, which implies that the court's attitude was unreasonable, arbitrary, or unconscionable.

*Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140; *Miller v. Miller*, 37 Ohio St.3d 71, 73, 523 N.E.2d 846 (1988). An appellate court must adhere to "'every reasonable presumption in favor of the lower court's judgment and finding of facts.'" *In re Brodbeck*, 97 Ohio App.3d 652, 659, 647 N.E.2d 240 (3d Dist.1994), quoting *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 1994-Ohio-432, 638 N.E.2d 533.

{¶14} Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. *In re T.S.*, 8th Dist. No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *Id.*

{¶15} "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to cause a trier of fact to develop a firm belief or conviction as to the facts sought to be established." *T.S.* at ¶ 24, citing *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶16} R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that (1) granting permanent custody of the child to the agency is in the best interest of the child and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be

placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. R.C. 2151.414(B)(1).

{¶17} In this case, the trial court determined that the second prong of R.C. 2151.414(B)(1) was satisfied because A.C. could not be placed with either parent within a reasonable period of time or should not be placed with her parents. R.C. 2151.414(B)(1)(a). When determining whether a child can be placed with either parent within a reasonable period of time, the court must consider R.C. 2151.414(E), which provides that if the court determines at a hearing that one or more of the factors set forth in this section exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. *In re I.K.*, 8th Dist. No. 96469, 2011-Ohio-4512, ¶ 8.

{¶18} In this case, the court determined that factors (1), (2), (4), and (14) of R.C. 2151.414(E) existed. However, the existence of any one of these factors is sufficient to determine that a child cannot be placed with a parent within a reasonable period of time. *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 10 (8th Dist.), citing *In re William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738.

{¶19} Under R.C. 2151.414(E)(1), the court must consider whether, despite "reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside their home."

{¶20} R.C. 2151.414(E)(2), requires the court to consider whether, "[c]hronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year * * *."

{¶21} A.C. was removed from appellant's care in May 2011. After her removal, CCDCFS provided appellant with a case plan designed to resolve those issues that led to removal, specifically, a substance abuse assessment and treatment, mental health services, and housing. Despite 16 months to do so, appellant failed to complete any of the objectives of the case plan by the time the permanent custody trial commenced.

{¶22} Appellant was twice referred for a substance abuse assessment and twice was referred for intensive outpatient treatment. The first time she was referred for treatment, she failed to attend any treatment and failed to comply with numerous requests for drug testing.

{¶23} During the pendency of the proceedings, appellant did not complete a substance abuse program, did not complete the random drug and alcohol testing, and failed to resolve her substance abuse issues. Although it was noted that appellant was to begin her outpatient treatment two weeks after the permanent custody hearing, no evidence or explanation was given as to why appellant failed to complete the program previously in June 2011 when initially ordered.

{¶24} Additionally, testimony was also given that appellant failed to address her mental health issues. Appellant was diagnosed with bipolar disorder and was to participate in mental health services. The evidence established that while appellant originally met with her mental health counselor twice per month, her visits became very inconsistent. At the time of the permanent custody hearing, appellant had not appeared for several appointments and canceled numerous others. She had not participated in counseling in more than five months and it was unclear whether she was taking her prescribed mental health medication.

{¶25} The testimony presented at the permanent custody hearing established that appellant failed to substantially remedy the conditions that led to A.C.'s removal and that appellant's chronic mental health condition and chemical dependency makes her unable to provide an adequate permanent home. Accordingly, clear and convincing evidence was presented to support the trial court's decision that factors (1) and (2) of R.C. 2151.414(E) existed.

{¶26} Under R.C. 2151.414(E)(4), the court must consider whether the "parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." Additionally, R.C. 2151.414(E)(14) requires the court to consider whether "[t]he parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

{¶27} As part of her case plan objectives, appellant was also required to maintain stable housing. Although she was able to obtain housing in August 2011, she became homeless again in April 2012. The cycle repeated again when she obtained housing in September 2012, but at the time of the permanent custody hearing, she again lacked a stable residence. In fact, her case worker testified that appellant would not provide a current address of her residency.

{¶28} As for visitation, although appellant was also able to visit with A.C. while she was in the temporary custody of CCDCFS, her originally scheduled weekly visits were inconsistent; thus, the visitation changed to every other week. Nevertheless, appellant was still unable to keep consistent visits. In the 15 months between June 2011 and September 2012, appellant only visited A.C. on four occasions.

**{¶29}** The testimony presented at the permanent custody hearing established that appellant demonstrated a lack of commitment toward A.C. by failing to visit with A.C., failing to maintain an adequate permanent home, and being unwilling to provide for A.C.'s basic needs. Accordingly, clear and convincing evidence was presented to support the trial court's decision that factors (4) and (14) of R.C. 2151.414(E) existed.

**{¶30}** Based on the above findings and testimony, the record supports the trial court's determination that A.C. could not be placed with either parent within a reasonable period of time or should not be placed with the parents — satisfying the second prong of R.C. 2151.414(B)(1).

**{¶31}** Having made this determination, the trial court was then required under the first prong of R.C. 2151.414(B)(1) to make a finding that permanent custody was in A.C.'s best interest under the factors set forth in R.C. 2151.414(D)(1)-(5).

**{¶32}** R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved

without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶33} "There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing, *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993).

{¶34} In this case, the trial court considered all relevant factors, including those listed in R.C. 2151.414(D)(1)-(5). A review of the record clearly and convincingly supports the trial court's finding that permanent custody is in A.C.'s best interest.

{¶35} The record demonstrates that during the pendency of the case, appellant visited A.C. four times and when visitation did occur, appellant's case worker testified that no bond existed between appellant and A.C. — A.C. treated appellant as a "stranger."

{¶36} While A.C. was too young to express her wishes, her guardian ad litem expressed to the court that permanent custody was in the child's best interest because A.C.'s parents had not made any significant steps in completing their case plans and that A.C. is in a foster home that is an adoptive placement.

{¶37} At the time of the permanent custody hearing, A.C. had been in the custody of CCDCFS for 16 consecutive months and reunification with either parent was not

imminent. The record reflected that both appellant and father had not made any significant progress on their case plan services or objectives. Moreover, no relatives of A.C. were willing or able to care for her.

{¶38} The court found that A.C. needed a legally secure permanent placement and that the only way to achieve this was granting permanent custody to CCDCFS. A.C. has been with her current foster family placement since May 2011, and the family indicated an intention of adopting A.C. According to the case worker, A.C. has a good relationship with her foster parents and shows affection for them. The social worker testified that A.C. and her foster family have a strong loving bond.

{¶39} Upon our review of the record, we find that the trial court weighed all relevant factors and made a decision in the best interest of A.C. This court finds competent and credible evidence in the record supporting the trial court's decision. Accordingly, the trial court did not abuse its discretion in granting permanent custody of A.C. to CCDCFS. Appellant's second assignment of error is overruled.

### III. Indian Child Welfare Act

{¶40} In her third assignment of error, mother contends that the trial court committed plain error when it proceeded with the permanent custody hearing without complying with the Indian Child Welfare Act ("ICWA"), codified in 25 U.S.C. 1912.

{¶41} In order to invoke the provisions of the ICWA, there must be a preliminary showing that a custody proceeding involves an "Indian child." *In re Williams*, 9th Dist.

Nos. 20773 and 20786, 2002-Ohio-321, *22. An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. 1903(4). The party who asserts the applicability of the ICWA bears the burden of proving that a child meets the statutory definition of an "Indian child." *Williams* at *22. To meet this burden, the party asserting the applicability of the ICWA must do more than raise the possibility that a child has Native American ancestry. *See In re B.S.*, 184 Ohio App.3d 463, 2009-Ohio-5497, 921 N.E.2d 320, ¶ 63 (8th Dist.).

{¶42} In this case, the trial court did not specifically inquire of the parties whether A.C. was an "Indian Child" or whether the ICWA was an issue in this case. However, at the emergency custody hearing on May 9, 2011, the prosecutor asked the case worker whether she had "any information regarding the child's ancestry," and the case worker responded "no." Present at the hearing were both appellant and A.C.'s father, and even though the issue was broached, neither parent indicated whether the ICWA applied.

{¶43} Moreover, although raised as an assigned error on appeal, appellant does not make any allegation or identify that A.C. is an "Indian child" under the ICWA. Accordingly, appellant's third assignment of error is overruled.

IV. Ineffective Assistance of Counsel

**{¶44}** In her final assignment of error, appellant contends that she was denied effective assistance of trial counsel because (1) after the trial court denied counsel's request for a continuance, her counsel should have asked for a recess so that counsel could have attempted to contact her, and (2) that trial counsel failed to call any witnesses on her behalf at the permanent custody hearing.

**{¶45}** An indigent parent is entitled to be represented by appointed counsel when the State seeks to terminate her parental rights. *In re P.M.*, 179 Ohio App.3d 413, 2008-Ohio-6041, 902 N.E.2d 74, ¶ 14 (2d Dist.), citing *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 399 N.E.2d 66 (1980), paragraph two of the syllabus. This right to counsel includes the right to the effective assistance of counsel. *Id*. at ¶ 15. "[T]he test for ineffective assistance of counsel used in criminal cases is equally applicable in actions seeking to force the permanent, involuntary termination of parental" rights. *Id*., citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998).

**{¶46}** In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id*. at 688.

**{¶47}** In this case, although appellant contends her counsel was ineffective for failing to request a recess to contact her when she failed to appear at the permanent custody hearing, she fails to identify or explain on appeal why she was absent from the hearing and fails to demonstrate how her counsel was ineffective for failing to call her.

**{¶48}** Additionally, she contends that her trial counsel was ineffective for failing to call any witnesses on her behalf. But again, appellant fails to identify on appeal what witnesses could have been called or what their testimony would have provided to the case.

**{¶49}** Because appellant fails to identify how these alleged deficiencies prejudiced her or that the result of the permanent custody hearing would have been different, her final assignment of error is overruled.

**{¶50}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
LARRY A. JONES, SR., J., CONCUR