DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Duane P. ("Father"), has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his children, N.P. and N.P., and placed them in the permanent custody of the Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} CSB initially became involved with this family on May 26, 2006, when the mother called the police to the home to investigate domestic violence. *Page 2 
When the police arrived, they found Father at the home with twins, N.P. and N.P., born on May 8, 2005. The police removed the twins pursuant to Juv.R. 6.
 {¶ 3} On May 30, 2006, CSB filed complaints in juvenile court alleging that the children were dependent and seeking temporary custody. The mother of the twins is not a party to this appeal. On or about August 1, 2006, she moved to California, had no further contact with the twins, and did not participate in the proceedings below. According to the CSB supervisor, Mother stated that she could not take the children back because she was not in an emotional or mental state to be able to parent them.
 {¶ 4} On August 22, 2006, the children were adjudicated dependent and CSB was granted temporary custody. The case plan required Father to seek counseling for anger management, attend parenting classes, and obtain random drug screens.
 {¶ 5} On March 1, 2007, CSB moved for permanent custody. On July 13, 2007, the trial court found that the children could not be returned to either parent within a reasonable time or should not be returned to a parent, and that it was in the best interest of the children to be placed in the permanent custody of CSB. Accordingly, the trial court terminated the parental rights of both parents and placed the children in the permanent custody of CSB. Father has appealed and has assigned two errors for review. *Page 3 
 II Assignment of Error One "THE TRIAL COURT ERRED AND [DENIED] [FATHER] DUE PROCESS WHEN IT FAILED TO GRANT HIS ORAL MOTION FOR A [CONTINUANCE] AND HELD THE DISPOSITIONAL PERMANENT CUSTODY HEARING IN HIS ABSENCE."
 {¶ 6} Father has argued that the trial court denied him his due process right to be present at the permanent custody hearing when it proceeded without him.
 {¶ 7} The trial court initially set the permanent custody hearing for May 21, 2007. Though Father had previously been advised of his right to appointed counsel, Father appeared at that time and requested counsel and a continuance of the hearing. Over CSB objections, the trial court granted Father a continuance. The trial court also indicated it would appoint counsel for Father, subject to his completion of the application and eligibility. On May 24, 2007, the trial court set the hearing for June 28, 2007 at 1:00 p.m.
 {¶ 8} At 1:10 p.m. on June 28, 2007, Father telephoned the court to request another continuance. With opposing counsel and witnesses already assembled in the courtroom, the trial court denied the motion since the hearing date had been set for over a month, the motion was not in writing, and Father had ample time to request a continuance before that late date. Moreover, the attorney for CSB stated that after the continued hearing on May 21, 2007, she had walked Father toward the application office and explained the procedure to him. She *Page 4 
further stated that, instead of applying for counsel, Father became upset and left the building. The record indicates that Father did not fill out the request for appointed counsel until July 2, 2007. The June 28, 2007 permanent custody hearing proceeded in the absence of Father.
 {¶ 9} The decision whether to grant a request for a continuance of a permanent custody hearing lies within the sound discretion of the trial court, and an appellate court must not reverse the denial of a continuance absent an abuse of discretion. State v. Unger (1981),67 Ohio St.2d 65, 67. Courts should attempt to balance any potential prejudice to the movant against the court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. Id. The trial court should consider "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the party contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.
 {¶ 10} While Father certainly has a fundamental liberty interest in the care, custody, and control of his children, Troxel v. Granville
(2000), 530 U.S. 57, 65, there also exists an interest in the prompt resolution of the children's custody. See Unger, 67 Ohio St.2d at 67. Here, Father had previously been granted one *Page 5 
continuance in order to obtain counsel and, at the time of his request for a second continuance, the trial judge, opposing litigants, and witnesses were already assembled in the courtroom. Father had been informed of his right to counsel, and had an opportunity to apply for appointed counsel on May 21, 2007, but he failed to do so. The record contains no explanation of the basis for Father's second request for a continuance, and this Court cannot speculate as to the merit of his request. Assuming the request was for the purpose of securing counsel, a court need not grant such a continuance where the request "plausibly can be viewed as simply a delaying tactic or as otherwise unreasonable."In re Zhang (1999), 135 Ohio App.3d 350, 355, citing Sampley v. Atty.Gen. of North Carolina (C.A.4, 1986), 786 F.2d 610. (finding no abuse of discretion in denial of continuance where petitioner had almost a full month to secure counsel).
 {¶ 11} Accordingly, this Court concludes that Father has failed to demonstrate an abuse of discretion by the trial court in overruling his request for a continuance.
 Assignment of Error Two "THE TRIAL COURT ERRED IN GRANTING CSB'S MOTION FOR PERMANENT CUSTODY AS CSB FAILED TO USE REASONABLE EFFORTS TO REUNITE [FATHER] AND THE MINOR CHILDREN."
 {¶ 12} Father next argues that CSB is obligated to use "reasonable case planning and diligent efforts" to assist the parents in reunification and that there was no evidence of such efforts in this case. Brief of Appellant, at 9. The basis *Page 6 
of Father's argument is that the testimony regarding such efforts was inadmissible hearsay since it came by way of a supervisor and not the caseworker who actually managed the case.
 {¶ 13} The CSB caseworker assigned to the case was unavailable at the time of the hearing because she had given birth to a child three days earlier. Instead, her supervisor was present and testified on her behalf. The supervisor testified that she had communicated with the caseworker, reviewed the file, and made telephone calls to collaterals and the foster family. Father has asserted that the supervisor's testimony was inadmissible hearsay because she testified based on her review of agency records and the assigned caseworker's records.
 {¶ 14} This Court concludes that there is no merit in Father's argument for several reasons. First, there was no objection to the testimony and Father has not argued plain error. Absent objection, any error is forfeited and need not be addressed on appeal. In re D.W., 8th Dist. No. 84547, 2005-Ohio-1867, at ¶ 26, citing Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43. Of course, in this case, Father was not present to enter an objection, but, as stated above, that fault accrues to Father. Cf. In re Waughtel Children (July 7, 1988), 4th Dist. No. 1724 (permitting the supervisor to testify from agency records where the caseworker was deceased).
 {¶ 15} Second, a finding of "reasonable case planning and diligent efforts" by the agency is relevant to only one of several alternative findings available to the *Page 7 
trial court on the first prong of the permanent custody test. See R.C.2151.414(E)(1). In addition to finding that the parents failed to remedy the conditions that brought the children into care despite "the reasonable case planning and diligent efforts" by the agency, the trial court made several other findings which compel the same determination, i.e., that the children cannot be placed with a parent within a reasonable time or should not be placed with a parent. See R.C.2151.414(B)(1)(a) and R.C. 2151.414(E). Those additional findings do not require the court to consider whether the agency used "reasonable case planning and diligent efforts."
 {¶ 16} The additional findings made by the trial court include a demonstrated lack of commitment to the children by failing to regularly support, visit, or communicate with them, pursuant to R.C.2151.414(E)(4), and convictions for endangering children related to siblings of these children, pursuant to R.C. 2151.414(E)(6). Furthermore, the trial court found that the mother had abandoned the children, pursuant to R.C. 2151.414(E)(10). As stated above, these additional findings do not require a consideration of "reasonable case planning and diligent efforts" by the agency and also compel the conclusion that the children could not be placed with either parent within a reasonable time or should not be placed with a parent. See R.C.2151.414(E). Thus, the first prong of the permanent custody test has been met without consideration of whether the agency used "reasonable case planning and diligent efforts." *Page 8 
 {¶ 17} Third, it was apparent from the testimony of other witnesses that Father was aware of his case plan, but did not make any effort to complete it. Jennifer Samardak, the guardian ad litem, stated that Father said he loved his children and was aware of his case plan, but that he was not going to work on the requirements of his case plan. Susan Kasarnich, the records custodian at the Community Health Center, presented certified copies of records indicating that Father had not had any contact with the agency from May 1, 2006 through June 19, 2007. She explained that Father had not called the agency, made an appointment, or had any interaction with a staff member during that period of time.
 {¶ 18} Fourth, the trial judge explicitly acknowledged the existence of hearsay in the record. When a matter is tried before the court, there is a presumption that the trial judge "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. White (1968),15 Ohio St.2d 146, 151. Father cites no specific findings where the trial court relied only on the alleged hearsay.
 {¶ 19} Moreover, if Father meant to argue, instead, that the agency failed to establish "reasonable efforts" toward reunification, pursuant to R.C. 2151.419, that argument similarly fails. The Ohio Supreme Court has declared that an agency is not required to establish reasonable efforts towards reunification at the permanent custody hearing unless it has not previously demonstrated such efforts. In re CF., *Page 9 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 42-43. In this case, such efforts were previously determined by the trial court, and the agency was not required to establish reasonable efforts again at the permanent custody hearing.
 {¶ 20} Accordingly, Father's second assignment of error is overruled.
 III {¶ 21} Father's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 10 
Costs taxed to Appellant.
 SLABY, P. J., MOORE, J. CONCUR *Page 1